**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CRIMINAL ACTION** |
| v. ) | |
| ) | **No. 07-20096-CM** |
| ) | |
| **ERVIN E. J. JOHNSON,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

Defendant Ervin E. J. Johnson is charged with two counts each of (1) possession with intent to distribute five grams or more of crack cocaine and (2) use of a firearm in relation to a drug-trafficking crime. The charges arise from events occurring on December 18, 2006 and February 12, 2007. This matter is before the court on defendant's Motion to Suppress (Doc. 16), which seeks suppression of the evidence recovered from the December 18, 2006 search and seizure of defendant.

On June 6, 2008, the court held a hearing on defendant's motion to suppress. The government presented one witness, Kansas City, Kansas police officer Chad Erwin. Both parties presented oral argument. After presenting evidence and argument to the court, the parties requested additional time for supplemental briefing. The supplemental briefing is complete. For the following reasons, the court finds that the officers had reasonable suspicion to detain defendant and conduct a protective frisk.

**I.     Factual Background**

On December 18, 2006, police officers from the Kansas City, Kansas Nighttime

Community Policing Unit were patrolling the Highland Park Apartment Complex. The Unit specializes in investigating high drug-trafficking areas and was patrolling the complex in response to complaints that individuals were loitering outside of the apartment buildings and selling drugs. The Highland Park Apartment Complex is a low-income, multi-building apartment complex with more than one hundred units. Officers Chad Erwin and Mark Bundy were patrolling together. They were in uniform and riding in a two-man unit vehicle.

Around six o'clock, they saw two black males loitering in a grassy area outside of an apartment building at the south end of the complex. The men were not directly in front of a door or vehicle. They were off to the side of one of the buildings about fifteen feet from the building. Defendant had his hands in his pockets. The officers approached the two men and asked them for identification. Officer Erwin requested defendant's identification because he wanted to (1) see if defendant belonged there and (2) run a warrant check. Defendant gave Officer Erwin his identification and placed his hands back in his pockets. Officer Erwin confirmed defendant's identity and discovered that defendant lived in the apartment complex—fifteen to twenty buildings away. Because defendant placed his hands back in his pockets, Officer Erwin secured defendant's identification under the pen attached to his shirt pocket. Concerned that defendant might have a weapon, Officer Erwin asked defendant to remove his hands from his pockets. Defendant refused. Defendant continued to refuse the officer's request, and Officer Erwin began a protective frisk of defendant. While Officer Erwin was frisking defendant, he felt a handgun in defendant's coat pocket. Officer Erwin was holding onto defendant's coat and the object in defendant's pocket, but defendant maneuvered out of his coat and ran into the woods. The officers were unable to locate defendant. They found a loaded handgun and crack cocaine in defendant's coat.

**II.     Discussion**

Defendant argues that the December 2006 search and seizure violated the Fourth Amendment to the United States Constitution because (1) the officers did not have reasonable suspicion to make an investigative detention and (2) even if the officers had reasonable suspicion to detain him, they did not have reasonable suspicion to conduct a protective frisk.

*A.  The Initial Stop*

Defendant argues that at the time the officers detained defendant, they did not have reasonable suspicion to conduct an investigative detention. Originally, the government argued that "Officer Erwin was justified in approaching the defendant and conducting an investigatory detention," but focused its arguments on the reasonable suspicion for the protective frisk. In its supplemental response, the government argues for the first time that the officers did not seize defendant or conduct an investigative detention.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It "does not proscribe all contact between the police and citizens, but is designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)). There are three categories of police-citizen encounters, two of which implement the Fourth Amendment: "(1) consensual encounters[,] which do not implicate the Fourth Amendment; (2) investigative detentions[,] which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *United States v. Lopez*, 443 F.3d 1280, 1283

-3-

(10th Cir. 2006) (citing *United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998)). The questions before the court are whether the encounter between the officers and defendant was a consensual encounter or an investigative detention, and if it was an investigative detention, whether the officers had reasonable suspicion to detain defendant.

"[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Nor does a police officer seize an individual by merely asking to see identification. *United States v. Olivares-Campos*, 2008 WL 1930073, No. 06-3411, at *3 (10th Cir. May 2, 2008) ("[I]t is well settled that police may ask to see identification without effecting a seizure."). An encounter is consensual if a "reasonable person would feel free 'to disregard the police and go about his business.'" *Bostick*, 501 U.S. at 434 (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). When determining whether a police-citizen encounter is a seizure, the court considers the following circumstances:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor, and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*Lopez*, 443 F.3d at 1284 (citing *United States v. Spence*, 397 F.3d 1280, 1283 (10th Cir. 2005)). The list is non-exhaustive and no single factor is dispositive. *Id.* The nature of an encounter may change if the officer's conduct changes—a consensual encounter can transform into an investigative detention. *Id.; see also United States v. Lambert*, 46 F.3d 1064, 1068 (10th Cir. 1995) ("[W]hat began as a consensual encounter quickly became an investigative detention once the agents received Mr. Lambert's driver's license and did not return it to him.").

Although police may request and examine identification without effecting a seizure, "[p]recedent clearly establishes that when law enforcement officials retain an individual's driver's license in the course of questioning him, that individual, as a general rule, will not reasonably feel free to terminate the encounter." *Lambert*, 46 F.3d at 1068; *see also United States v. Guerrero*, 472 F.3d 784, 786–87 (10th Cir. 2007) (holding that a detention does not occur if officers merely examine an individual's license, but that the encounter becomes a detention once the officers take possession of the licence). When determining whether an examination of an individual's license transforms a consensual encounter into an investigative detention, the court considers the officer's reasons for requesting the license and whether the officer retains the license. The focus is not solely on the length of time an officer retains an individual's license, but also on whether the officer retained the license for longer than necessary to accomplish his or her objective—such as confirming an individual's identity, *Lambert*, 46 F.3d at 1069; determining whether the individual is using an alias, *id.*; or confirming that the individual's address matches the address on the car registration, *Lopez*, 443 F.3d at 1285.

In *Lopez*, the officer approached Mr. Lopez because it was late at night in a high-crime area. *Id.* When the officer asked for Mr. Lopez's identification, he knew the address of the owner of the car that Mr. Lopez was standing next to and that the car had not been reported stolen. *Id.* The officer was able to establish Mr. Lopez's identity and confirm that his address matched the address on the car registration nearly immediately. *Id.* The court held that the continued retention of Mr. Lopez's license was undue and that Mr. Lopez was seized. *Id.* at 1286. Similarly, in *Lambert*, the court found that the agents were unjustified in keeping the defendant's license after they were able to verify his identity, which occurred almost immediately after they received the license. *Lambert*, 46 F.3d at 1069.

Here, Officer Erwin and his partner observed two black males loitering in front of an apartment complex in a high drug-trafficking area. They approached the men to see if they belonged in the area. Officer Erwin examined defendant's driver's license and confirmed his identity and that he lived in the apartment complex. At that point, the encounter was consensual—there is no evidence in the record to suggest that a reasonable person would not have felt free to end the encounter. But after confirming defendant's identity and home address, Officer Erwin placed defendant's identification under the pen in his shirt pocket—indicating that defendant was not free to leave. Officer Erwin had met his objective for examining the license; he had identified defendant and confirmed defendant's address. Retaining defendant's license was unnecessary and converted the encounter into an investigative detention.[1]

Seizure through an investigative detention "is constitutional only if supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *Lambert*, 46 F.3d at 1069 (quoting *United States v. Ward*, 961 F.2d 1526, 1529 (10th Cir. 1992)) (internal quotations omitted). When considering whether the officers had reasonable suspicion, the court looks at the totality of the circumstances to determine whether a particularized and objective basis—viewed from the standpoint of an objectively reasonable police officer—existed for suspecting criminal activity. *Olivares-Campos*, 2008 WL 1930073, at *4. The court must "'be careful to judge the officer's conduct in light of common sense and ordinary human experience but also to grant deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances.'" *United States v. Ramirez*, 479 F.3d 1229, 1244 (10th Cir.

---

[1] Retaining the license to run a warrant check also converts the encounter into an investigative detention because an officer must have reasonable suspicion to take and run an individual's license. *Guerrero*, 472 F.3d at 787 ("[R]easonable suspicion remains the proper standard for police to take and run the defendant's license, even when the encounter begins consensually.").

2007) (quoting *United States v. Wallace*, 429 F.3d 969, 975–76 (10th Cir. 2005)). "Officers merely need an articulable reasonable suspicion that criminal activity may be afoot—they need not even assert a 'fair probability' that their investigation will actually turn up evidence of criminal activity." *United States v. Lopez*, 518 F.3d 790, 799 (10th Cir. 2008).

Although each observation may be susceptible to an innocent explanation when considered individually, the court must "evaluate how convincingly they fit together into a cohesive, convincing picture of illegal conduct." *Guerrero*, 472 F.3d at 787. Viewed separately the circumstances in this case could be entirely innocent[2], but when considered collectively, the facts create a reasonable suspicion that defendant is involved in illegal conduct: defendant was standing outside in a high-crime area in mid-December on a chilly evening; he was nowhere near his apartment and was fifteen to twenty feet from any apartment; and most importantly, defendant kept his hands in his pockets during the entire encounter and repeatedly refused to remove them, a strong indication that he was hiding something, presumably illegal, from the officers. *See, e.g., United States v. Bailey*, 417 F.3d 873, 878 (8th Cir. 2005) ("[the defendant's] apparent attempt to conceal something provided [the officer] additional reasons to suspect criminal activity."). Additionally, based on his training and experience, Officer Erwin testified that (1) people often conduct drug sales out in the open in locations like the Highland Park Apartment Complex; (2) he looks for individuals loitering outside of buildings when he is trying to identify individuals involved in drug sales; and (3) an individual's refusal to remove his hands from his pockets

---

[2] The fact that defendant was in a high-crime neighborhood does not, standing alone, give rise to reasonable suspicion that he is involved in criminal activity. *United States v. Gutierrez-Daniez*, 131 F.3d 939, 942–43 (10th Cir. 1997). Similarly, having his hands in his pockets on a winter evening does not create reasonable suspicion. *United States v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996) ("The fact that Davis had his hands in his coat pockets on a December night in Tulsa also does not justify an investigative detention.").

indicates that the individual may be hiding a weapon, keeping a weapon steady in his coat, or making sure a weapon was accessible.

The court is mindful of the essential protections afforded by the Fourth Amendment. An individual standing outside in a high-crime area with his hands in is pockets on a winter night is not subject to an investigative detention; however, when the individual's behavior indicates that he is concealing a weapon from police officers, he creates reasonable suspicion that he is involved in criminal activity, and the officers have reasonable suspicion to be concerned for their safety. Under the totality of the circumstances and with deference to the officers' training and ability to distinguish between innocent and suspicious circumstances, the court finds that at the time Officer Erwin retained defendant's license, the officers had reasonable suspicion to detain defendant.

### *B. The Protective Frisk*

Defendant argues that even if the officers had reasonable suspicion to detain him, they did not have reasonable suspicion to believe that he was armed and dangerous, and therefore, Officer Erwin should not have conducted the protective frisk. During an investigative detention, an officer may conduct a protective frisk of the suspect's outer clothing if the officer reasonably believes that the suspect might be armed and presently dangerous. *United States v. Harris*, 313 F.3d 1228, 1234 (10th Cir. 2002).

Officer Erwin noticed that defendant kept his hands in his pockets, which based on the officer's training and experience lead him to believe the defendant may be armed. When Officer Erwin asked defendant to remove his hands, defendant repeatedly refused. Officer Erwin testified that he conducted the protective frisk of the defendant because he was concerned for his safety. Officer Erwin's law enforcement training and defendant's behavior—his refusal to remove his hands from his pockets—reasonably lead Officer Erwin to believe that defendant was armed and

-8-

-9-

dangerous. *Id*. at 1236 (finding that the police officer's protective frisk was justified when the defendant refused to remove his hands from his pockets). After reviewing the facts of this case, the court finds that under the totality of the circumstances, Officer Erwin's protective frisk of defendant was justified.

**IT IS THEREFORE ORDERED** that defendant's Motion to Suppress (Doc. 16) is denied.

Dated this 31st day of July 2008, at Kansas City, Kansas.

        **s/ Carlos Murguia**
        **CARLOS MURGUIA**
        **United States District Judge**